*1199 OPINION.
Trammell:
The only question presented by the record in this appeal is the amount, if any, that the taxpayer is entitled to include in its invested capital for the years 1918 to 1921, inclusive, on account of the item of $212,746.32, designated on its books as “ Other intangible electrical capital.” The taxpayer contends that if the item is to be segregated $134,500 of the amount represents the cost to it of the “ Hill contract ” acquired frqm the Tonawanda Cataract Power Co. and that the remainder of the item, to wit, $64,246.32, should be considered as the cost to it of the steam plant acquired from the Tonawanda Lighting & Power Co. One witness considered the “ steam plant ” as an element in the cost of distribution system and franchises of the Tonawanda ■ Lighting & Power Co. and another considered it as an additional cost attributable to the “Hill contract.” It was contended that under either theory the entire amount is properly a part of its invested capital. •
The Board will take judicial notice of the statutes of New York under which the taxpayer corporation was organized. Under the statute in effect at the time of the statutory consolidation of the corporations, all the rights, privileges, franchises, and interests of every kind belonging to or enjoyed by the corporations consolidated, and every kind of property, real, personal, and mixed, are deemed to be transferred and vested in the new corporation without any other deed or transfer.
The effect of these statutory provisions is that the new corporation acquired assets for stock on its organization. It then becomes necessary to determine the actual cash value of the assets in question and whether they, or any of them, were tangible or intangible.
Two questions arise in the determination of the invested capital with respect to the “ Hill contract ” and the steam plant: First, what was their actual cash value at the time received in exchange for stock; and second, whether either or both of the above items were tangible or intangible. If intangible, the amount to be included in invested capital is limited by section 326 (a) (4) of the Revenue Act of 1918.
There is no evidence as to the value of the steam plant further than that it was abandoned soon after it was taken over. It could not be used in competition with hydraulic power and was not intended to be used for a longer time than was necessary to get the plant into operation under the power contract. The taxpayer contended that the cost of the steam plant should be considered as *1200 additional cost attributable to the acquisition of the “ Hill contract.” We do not think this contention is well founded, but if correct it would not establish the value of the steam plant. The “Hill contract ” was acquired from one corporation and the steam plant from another, and there is nothing to indicate that the taxpayer was required to purchase the steam plant in order to acquire the “Hill contract.” It might be more logically contended that the cost of the steam plant represented additional cost attributable to the acquisition of the distribution system of the Tonawanda Lighting & Power Co. But, as stated above, we are here concerned with values and not cost, and we have no evidence of value when the asset was acquired. We have no evidence that the distribution system acquired, even considering the steam plant as inseparably connected with it, was worth in excess of .the values allowed by the Commissioner. Even if the steam plant were shown to have had a value when acquired, it should have been charged off against earned surplus when it was abandoned.
With reference to the “ Hill contract,” the evidence shows that it was acquired by the Tonawanda Cataract Power Co. in exchange for its capital stock of the par value of $100,000. The Tonawanda Cataract Power Co. also was required to pay to the Niagara Falls Power Co., when the assignment of the contract by Hill was confirmed by that company, stock of another company of the par value of $34,500, on account of .power that had been contracted for but not taken. Thereafter the contract was carried on the books of the Tonawanda Cataract Power Co. at $134,500, and when taken over by the taxpayer was set up on its books at that figure.
We have then one company with a distribution system but without a power contract to enable it to obtain electric power at such a cost as to enable it profitably to furnish power to its customers, it having only a steam plant, and we have another company with a power contract by which it could secure electric energy produced by hydraulic power at a price less than it could be produced by steam, but without a distribution system.
We have in the record the testimony of persons familiar with conditions at the time and place and who were qualified by training and experience to testify as to values of such a contract as the “ Hill contract” was. The actual intrinsic value is shown by the saving that could be made by obtaining power under it as compared with the cost of generating power by the steam plant. The steam plant could not be operated in competition with hydraulic power.
We have also the evidence of subsequent events supporting the testimony of the witness above referred to. There was testimony to the effect that a similar contract could have been obtained by any *1201 reputable person or company of financial responsibility without cost; fet others could not have obtained it for this particular territory when it once was entered into. It is not unusual that valuable exclusive franchises are obtained without consideration, yet, when obtained, can be sold by the grantee of recipient for a large consideration.
From a consideration of all the evidence, we are of the opinion hat the “ Hill contract ” had an actual cash value of $100,000 when required by the taxpayer.
The next question is: Was the “ Hill contract ” a tangible or intangible asset? It is argued by the taxpayer that it was tangible property; that it was in the nature of a lease of tangible property. With this view we do not agree. It was simply a contract to furnish electric energy to be produced in the future and was not a lease of sxisting tangible property. The taxpayer had the right, in case of breach of contract, to the use of the tangible property — that is, the generators and other machinery — but, in the absence of a breach, no right in or use of tangible property was involved. It was in no sense a lease of any property, and we are of the opinion that the contract referred to was intangible property and that it should be ncluded in invested capital subject to the statutory limitation on ntangibles.
Order of redetermination will ~be entered on 15 days’ notice, under Rule 50.